MW

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| L.B., | No. CV-18-03435-PHX-JJT (MHB) |
| Petitioner, | **ORDER** |
| v. | |
| Charles Keeton, et al., | |
| Respondents. | |

Petitioner L.B., who is detained in the CoreCivic La Palma Correctional Center in Eloy, Arizona, has filed, through counsel, a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) and a Motion for Temporary Restraining Order (Doc. 2). On October 26, 2018, Respondents filed a Response to the Motion (Doc. 10). For the reasons that follow, the Court will grant the Motion in part.

**I.   Background**

Petitioner is a native and citizen of Eritrea. On January 4, 2018, he entered the United States near the San Ysidro port of entry in San Diego, California and was encountered by the United States Department of Homeland Security (DHS), Customs and Border Protection (CBP). (Docs. 10-1; 10-2.) At the time of entry, Petitioner did not possess travel documents and informed agents that his date of birth was October 28, 2000. Petitioner was designated as an unaccompanied minor (UAC), issued a Notice to Appear (Form I-862), and transferred into the care and custody of the Office of Refugee Resettlement (ORR), an agency of the United States Department of Health and Human

Services (HHS).  ORR placed Petitioner in Southwest Keys juvenile residential care facility in California.

In the months that followed, ORR ordered a dental examination to determine Petitioner's age.  On March 16, 2018, Dr. David R. Senn, DDS prepared a report in which he opined that, based upon his analysis of dental radiographs, the range of possible ages for a male with the molar development of Petitioner was "17.10 to 23.70 years."  On this basis, he concluded that the "empirical statistical probability of [Petitioner] having attained 18 years of age [was] 92.55."  (Doc. 1-2 at 6.)  No action was taken at that time, and on May 29, 2018, Petitioner was transferred to VisionQuest, a juvenile residential facility in Tucson, Arizona.

While he was housed at VisionQuest, L.B., with the assistance of counsel, Petitioner began dependency proceedings in the Pima County Superior Court.  During that process, counsel for L.B. obtained a baptismal certificate which reflected L.B.'s birth date as October 28, 2000.  (Doc. 1-2 at 2.)  Counsel also obtained a rebuttal expert report as to Petitioner's age from Drs. Elizabeth DiGangi and Dawnie Steadman, forensic anthropologists, and Iain A. Pretty, a dental surgeon and professor of public health dentistry.  (Doc. 1-2 at 54-64.)

On August 15, 2018, Catherine Laurie, an ORR Federal Field Specialist, "reviewed [] documentation gathered by VisionQuest."  (Doc. 1-2 at 39.)  In a memo addressed to DHS in reference to Petitioner, Laurie stated that "this UAC does not have a birth certificate despite many attempts to reach the Eritrean Embassy, and the dental forensic results being 92.55 percent. This UAC's behaviors do not appear to be a minor but to the contrary he acts like an early 20's person. The original date of birth and the one that appears on the [Form] I-216 indicates that [L.B.] was 17 years of age with a date of 10/28/200[0].  I agree that this person is over the age of 18 years… Please refer this case to DHS ICE Juvenile Coordinator to arrange for transfer to ICE adult custody."  (Id.)  Petitioner was transferred into DHS custody and detained in an adult detention facility.

On October 10, 2018, the Pima County Superior Court entered three orders of

Findings of Fact and Conclusions of Law. (Doc. 1-2 at 66-67, 69-72, 74-77.) The state court found, in relevant part, that Dr. Senn's expert opinion was "not supported by credible scientific evidence and best practices," that L.B.'s birth date is October 28, 2000, that L.B. is a minor, and that L.B. is a dependent child. (Doc. 1-2 at 79-80.)

On October 15, 2018, counsel for L.B. emailed DHS officials a copy of Petitioner's baptismal certificate and the state court decisions requesting that Petitioner be transferred back into ORR custody. ICE Supervisor Shane Kitchen responded that he "spoke with [his] leadership and they advised after due deliberation, ERO has concluded that there is sufficient evidence to determine [Petitioner's] adult status, based on the greater than 92% probability that he is older than 20 years old. Further, ERO gives less weight to the Baptismal record based on his documented history of fraudulent document use. He will not be returned to ORR custody." (Doc. 1-2 at 82.) On October 16, 2018, Petitioner received an email from ICE Assistant Field Office Director Jason Ciliberti stating that "[they] have reviewed the available documentation and evidence [counsel] presented, and the matter was discussed with [his] leadership at the field office. After careful deliberation, [they] have determined that [L.B.] will remain in ICE custody." (Doc. 1-2 at 85.)

## II.     Habeas Corpus Petition

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where a petitioner is "in custody under or by color of the authority of the United States … in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). "The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention." *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012). *See also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention"); *Allen v. McCurry*, 449 U.S. 90, 98 n.12 (1980) ("the unique purpose of habeas corpus [is] to release the applicant for the writ from unlawful confinement").

- 3 -

Habeas corpus review is not available for claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," 8 U.S.C. § 1252(g), or to "challenge a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding [an alien's] detention or release," *Demore v. Kim*, 538 U.S. 510, 516 (2003) (discussing 8 U.S.C. § 1226(e)). However, "the extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision.'" *Jennings v. Rodriguez*, ___ U.S. ___, 138 S. Ct. 830, 841 (2018). *See also Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008). Thus, "challenges to the statutory framework that permits the alien's detention without bail," *Jennings*, 138 S. Ct. at 841, "questions of law" raised in the application or interpretation of detention statutes, *Leonardo v. Crawford,* 646 F.3d 1157, 1160 (9th Cir. 2011), and "claims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241,'" *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002)).

On October 24, 2018, Petitioner filed the instant § 2241 Petition, four days before his alleged 18th birthday on October 28, 2018. In the Petition, Petitioner names La Paloma Correctional Center Warden Charles Keeton, ICE, ICE Phoenix Field Office Director Enrique Lucero, and ICE Assistant Field Office Director Jason Ciliberti as Respondents.[1] Petitioner brings four grounds for relief challenging his continued detention in DHS custody. The Petition claims that: (1) by making and relying on an age determination to transfer Petitioner into DHS custody, based on dental radiographs and without reasonable suspicion to question the credibility of Petitioner's stated age, Respondents violated the Trafficking Victims Protection and Reauthorization Act of 2008

---

[1] Under the rationale articulated in *Armentero, infra*, and in the absence of authority addressing whether who is the proper respondent in immigration habeas corpus proceedings under 28 U.S.C. § 2241, the Court will not dismiss these Respondents or the Petition for failure to name a proper respondent *at this time*. *See Armentero v. INS*, 340 F.3d 1058, 1071-73 (9th Cir. 2003) withdrawn, 382 F.3d 1153 (9th Cir. 2004) (order); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 435 n.8 (2004) (declining to resolve who is the proper respondent in an immigration habeas corpus petition).

- 4 -

(TVPRA), 8 U.S.C. § 1232(b)(4), and its implementing policies; (2) by holding Petitioner, a minor, in custody in a facility that does not have "separate accommodations for juveniles," Respondents have detained Petitioner in violation of 8 C.F.R. § 1236.3(d); (3) by arbitrarily depriving Petitioner of his liberty, Respondents have detained Petitioner in violation of his substantive due process rights under the Fifth Amendment; and (4) by taking Petitioner into DHS custody without a hearing, Respondents have detained Petitioner in violation of his right to procedural due process under the Fifth Amendment.[2]

In his demand for relief, Petitioner asks the Court to: (1) order Respondents to release Petitioner from DHS custody and transfer him into the care and custody of ORR; (2) declare that ORR's policy of making age determinations based solely on dental radiographic analysis, and of transferring individuals into DHS custody if the results predict a 75% probability or more that the individual is 18 years or older, violates 8 U.S.C. § 1232(b); and (3) enjoin Respondents from further detaining Petitioner in violation of federal law and the Constitution.

**III.    Motion for Temporary Restraining Order**

A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.[3] *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012);

---

[2] The Court observes that while the Petition cites the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, as a basis for jurisdiction (*see* Doc. 1 ¶ 2), Petitioner does not clearly articulate any claim under the APA.

[3] Where a party "can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the [party]'s favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Where the movant seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). *See Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017) (discussing when a preliminary injunction ordering a bond hearing before an IJ is prohibitory, rather than mandatory, in nature).

In his Motion, Petitioner principally argues that ORR's determination of his age violated the TVPRA and Respondents unlawfully detained him in DHS custody because he is a minor.[4] He requests the Court order that: "(1) Respondents shall immediately return L.B. from ICE's adult prison to the Office of Refugee Resettlement. Notwithstanding any logistical delays in transferring physical custody, L.B. shall be for all other purposes considered as being in the custody of the Office of Refugee Resettlement from the time of th[e] order; and (2) ICE is enjoined from applying or considering the unlawful age redetermination of L.B., and thus preventing him from securing his rights as an unaccompanied alien child including but not limited to eligibility for: (a) Special Immigrant Juveniles Status under 8 U.S.C. § 1101(a)(27)(J); (b) initial jurisdiction of his asylum claim with US Citizenship and Immigration Services (USCIS) under § 1158(b)(3)(C); and, (c) placement in the least restrictive setting available on L.B.'s eighteenth birthday including release on his own recognizance under § 1232(c)(2)."

### A. Likelihood of Success on the Merits

In 2002, Congress enacted the Homeland Security Act (HSA), which transferred responsibility to HHS for "'coordinating and implementing the care and placement of unaccompanied alien children,' 'ensuring that the best interests of the child are

---

[4] Petitioner additionally argues in his motion that the age determination and his resulting detention in DHS custody violates the *Flores* Agreement and the Prison Rape Elimination Act (PREA). Because these legal theories have not been presented in the Petition, the Court does not reach those arguments here.

considered in decisions and actions relating to the care and custody of an unaccompanied alien child,' 'implementing policies with respect to the care and placement of unaccompanied alien children,' and identifying 'a sufficient number of qualified individuals, entities, and facilities to house' such children." *Flores v. Sessions*, 862 F.3d 863, 870 (2017) (quoting 6 U.S.C. § 279(b)(1)). In 2008, Congress enacted the TVPRA, codified in relevant part at 8 U.S.C. § 1232, which further addressed the framework for the care and custody of unaccompanied minors by HHS and DHS consistent with the HSA.

In order to determine whether an alien is an UAC for purposes of the statute, the TVPRA directs that "[HHS], in consultation with [DHS], shall develop procedures to make a prompt determination of the age of an alien, which shall be used by [DHS] and [HHS] for children in their respective custody. At a minimum, these procedures shall take into account *multiple forms of evidence*, including the *non-exclusive* use of radiographs, to determine the age of the unaccompanied alien." 8 U.S.C. § 1232(b)(4) (emphasis added).

Pursuant to the TVPRA, ORR developed an implementing guide summarizing "ORR policies for the placement, release and care of unaccompanied alien children in ORR custody." *See* Section 1.6, ORR Children Entering the United States Unaccompanied (Jan. 30, 2015) ("ORR Guide").[5] The ORR Guide provides, in relevant part:

> Each agency acknowledges the challenges in determining the age of individuals in custody. These challenges include, but are not limited to:
>
> • Unavailable documentation;
>
> • Contradictory or fraudulent identity documentation and/or statements;
>
> • Physical appearance of the individual; and
>
> • Diminished capacity of the individual.

---

[5] *See* https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied (last visited Oct. 26, 2018).

> ***The TVPRA requires the age determination procedures, at a minimum, to take into account multiple forms of evidence***. Accordingly, under these procedures, each case must be evaluated carefully based on the totality of all available evidence, including the statement of the individual in question.

ORR Guide § 1.6 (emphasis added).

> HHS may make age determinations of UAC when they are in HHS custody on a reasonable suspicion that a child in HHS custody is 18 years or older.
>
> In the event there is conflicting evidence regarding the age of an unaccompanied alien child in HHS custody, the HHS funded care provider case worker shall immediately notify the HHS Federal Field Specialist (FFS). The FFS will make the age determination based on his/her review of the multiple forms of evidence collected by the care provider. Until the age determination is made, the unaccompanied alien child is entitled to all services provided to UAC in HHS care and custody.

ORR Guide § 1.6.1.

> Case managers should seek the following as evidence when conducting age determinations. Information from each category is not required.
>
> Documentation:
>
> • Official government-issued documents, including birth certificates…
>
> • Other reliable records (e.g., baptismal certificates, school records, medical records) that indicate the unaccompanied alien child's date of birth.
>
> Statements by individuals (including the unaccompanied alien child) determined to have personal knowledge of the unaccompanied alien child's age, and who HHS concludes can credibly attest to the age of the unaccompanied alien child:
>
> • Statements provided by the unaccompanied alien child regarding his or her age or birth date. (An unaccompanied alien child's uncorroborated declaration regarding age is not used as the sole basis for an age determination.)
>
> • Statements from the unaccompanied alien child's parent(s) or legal guardian(s), if such persons can be

   identified and contacted.

- Statements from other persons.

- Information from another government agency (Federal, State, local or foreign)

- State/local arrest records.

- Child welfare agency records.

Medical Age Assessments:

Medical Age Assessments include both the use of imaging technology, such as radiography, and physical examinations. Regarding these assessments:

- A medical professional experienced in age assessment method(s) must perform the examination, taking into account the individual's ethnic and genetic background.

- Dental and skeletal (bone) maturity assessments using radiographs may be used to determine age, ***but only in conjunction with other evidence***.

- As no current medical assessment method can determine an exact age, best practice relies on the estimated probability that an individual is 18 or older. The examining doctor must submit a written report indicating the probability percentage that the individual is a minor or an adult.

ORR Response to Medical Age Assessments:

- The FFS supervisor must review the determination regarding the age submitted by the examining doctor.

- If an individual's estimated probability of being 18 or older is 75 percent or greater according to a medical age assessment, ***and this evidence has been considered in conjunction with the totality of the evidence***, ORR may refer the individual to DHS. The 75 percent probability threshold applies to all medical methods and approaches identified by the medical community as appropriate methods for assessing age.

- The FFS compiles all pertinent information (e.g., how reasonable suspicion was raised that the subject is over 18, the information referenced, the individuals or agencies consulted, statements and conclusions) and documents it in a memorandum for review and approval by the FFS Supervisor.

- The FFS then will forward the memo to the care provider facility case manager to be included in the unaccompanied alien child's case file and to the ICE Detention and

> Removal Office (DRO) Field Office Juvenile Coordinator (FOJC) for inclusion in the unaccompanied alien child's A-file.
>
> … If the new information or evidence indicates that an individual who is presumed to be an unaccompanied alien child is actually an adult, then HHS will coordinate with the assigned FOJC to immediately transfer the individual to an adult DRO facility.

ORR Guide § 1.6.2 (emphasis added).

The Court finds that Petitioner has demonstrated a likelihood of success on the merits of his claim that ORR's age determination in his case was invalid under the TVPRA and its implementing policies. The record before this Court shows that ORR's August 15, 2018 determination relied only on dental radiographic analysis and an ORR official's behavioral observation to conclude that Petitioner was at least 18 years. To make an age determination, however, the plain language of the TVPRA permits only the non-exclusive use of radiographs in conjunction with other "forms of *evidence*." Similarly, the ORR Guide provides that a dental radiograph assessment may only be used to determine age in conjunction with "other *evidence*." There is no apparent plausible construction of the TVPRA, or the ORR Guide, under which an ORR official's nonspecific, unsubstantiated speculation of what they perceive to be adult behavior suffices as "evidence" that may be considered and relied upon in making an age determination. Indeed, ORR does not include appearance or behavior as criteria for evaluating whether an individual is an adult or juvenile, but instead lists those factors as a challenge to the age determination process.

In their response, Respondents contend "there is additional evidence that Petitioner is already an adult. Petitioner was encountered by Mexican authorities on December 11, 2017, at which time he used a date of birth of October 28, 1999. [] Petitioner was also detained by Panamanian immigration authorities with a date of birth of June 10, 1994. []." (Doc. 10 at 7.) But Respondents offer no discussion concerning the reliability of these records, nor is there any indication that the reviewing ORR official knew of or considered them in making an age determination. Rather, because DHS was

aware of this conflicting information at the time it designated Petitioner as an UAC and transferred him into ORR custody, these records appear to be questionable at best.

The Court finds that Petitioner has made a sufficient showing that ORR's age determination was in contravention of the TVPRA. Respondents' transfer of Petitioner from ORR custody to DHS custody based on that determination therefore is in contravention of the TVPRA and the ORR Guide and does not authorize Petitioner's continued detention in DHS custody. Because the Court concludes that Plaintiff is likely to succeed on his claim that ORR's age determination in this instance was invalid, it does not reach the viability of his claim that ORR's referral policy violates the TVPRA, or Petitioner's remaining regulatory and constitutional claims.

### B.   Likelihood of Irreparable Harm

Petitioner asserts that he will suffer irreparable harm to his ability to seek immigration relief in the absence of an injunction. Specifically, he contends that he will lose his ability to pursue asylum and Special Immigrant Juvenile Status (SIJS). While a loss of available immigration relief may constitute irreparable harm, *see, e.g.*, *Beno v. Shalala*, 30 F.3d 1057, 1063 n.10 (9th Cir. 1994), neither the Petition nor the Motion sets forth any specific detail with regard to his pursuit of this relief or the requirements for obtaining relief. As a result, the Court lacks any meaningful basis for determining the impact that the age determination by ORR for purposes of custody will have on his potential eligibility for any form of relief. Further, while DHS and other federal agencies may seek to rely on ORR's age determination to adjudicate some application for benefits, there is no indication that they would do so immediately or before a decision on the merits of this case could be reached. Petitioner has not shown a likelihood of irreparable harm absent a temporary restraining order on this basis.

However, the Court finds that Petitioner has shown a likelihood of imminent, irreparable harm in the absence of an order enjoining his continued detention in DHS custody. In absence of immediate relief, Petitioner will be prevented from being considered for "placement in the least restrictive setting available," to which he would be

entitled as a minor reaching eighteen years of age while in ORR custody pursuant to 8 U.S.C. § 1232(c)(2)(B). (Doc. 2 at 14.) Respondents do not—and indeed cannot—maintain an argument that detaining a minor in an adult facility, even for one day, does not constitute harm.

### C. Public Interest and Balance of Equities

Where the government is the opposing party, as here, the public interest and balance of equities factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Public interest favors the correct application of federal law. *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013); *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011); *N.D. v. Haw. Dep't of Educ.,* 600 F.3d 1104, 1113 (9th Cir. 2010) ("[I]t is obvious that compliance with the law is in the public interest."). Because Petitioner has met his burden to establish a strong likelihood of success on the merits of his claim that Respondents have violated the TVPRA, the public interest and balance of equities weigh in his favor.

### D. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Because the Court perceives no likelihood of resulting harm to Respondents, the Court finds it appropriate to issue the TRO without requiring security.

### IV. Conclusion

Petitioner has met his burden to show that there is a strong likelihood of success on the merits of his habeas corpus claim that ORR's determination of his age, and his

resulting transfer into DHS custody based on that determination, violates the TVPRA; that, in the absence of a TRO transferring him into ORR custody, Petitioner would suffer irreparable injury; and that the public interest and balance of equities tip in his favor. ORR's age determination was made in violation of the TVPRA and the implementing policies and is therefore invalid. In the absence of any valid alternate age determination, at the present time, Petitioner's date of birth is deemed to be October 28, 2000. Thus, to the extent that Petitioner requests that Respondents be ordered to transfer him from DHS custody into the care and custody of ORR, the motion for a TRO will be granted. The motion is otherwise denied.

**IT IS ORDERED:**

(1) Petitioner's Motion for Temporary Restraining (Doc. 2) **is granted in part** and **denied in part** as set forth above.

(2) Respondents' age determination is rescinded and Respondents shall immediately **release** L.B. from DHS custody into to the care and custody of ORR and shall **transfer** Petitioner from the La Palma Correctional Center to an ORR juvenile facility. L.B. shall be considered as within the custody of ORR as of the date this Order is filed.

(3) Respondents must file a Notice with the Clerk of Court no later than **4:00 p.m.** on **October 27, 2018** reflecting compliance with this Order.

(4) Petitioner shall have until **November 9, 2018** to file any amended petition in accordance with Rule 15.1 of the Local Rules of Civil Procedure. Petitioner shall confer with Respondents and advise them as to whether an amended petition will be filed no later than **November 2, 2018**.

(5) If Petitioner elects not to file an amended petition, Respondents shall have until **December 10, 2018** to file an answer to the Petition (Doc. 1). If Petitioner elects to file an amended petition, Respondents must answer the amended petition within **30 days** of the date the amended petition is filed.[6] Respondents shall not file a dispositive motion

---

[6] Regarding courtesy copies of documents for chambers, Respondent is directed to

- 13 -

1 | in place of an answer without first showing cause as to why an answer is inadequate.

2 | (6) Petitioner shall have **15 days** from the filing of Respondents' answer to file
3 | a reply.

Dated this 26th Day of October, 2018.

_____
Honorable Diane J. Humetewa
United States District Judge

---

review Section II(D) of the Court's Electronic Case Filing Administrative Policies and Procedures Manual, which requires that "a courtesy copy of the filing, referencing the specific document number, shall be printed directly from CM/ECF." CM/ECF Admin. Man. § II(D)(3) (emphasis added). *See* http://www.azd.uscourts.gov/sites/default/files/documents/adm%20manual.pdf.

- 14 -